UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LAKSMEY HOR,

                    Petitioner,

v.                                    Case No. 3:07-cv-404-J-33HTS

WALTER A. MCNEIL,[1]
et al.,

                    Respondents.

_____

## ORDER

### I. Status

Petitioner Laksmey Hor, an inmate of the Florida penal system who is proceeding *pro se*, initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1) (hereinafter Petition) pursuant to 28 U.S.C. § 2254 on May 14, 2007. Petitioner Laksmey Hor challenges a 2003 state court (Duval County, Florida) judgment of conviction for second degree murder on the following grounds: (1) ineffective assistance of trial counsel for coercing her to plead guilty; (2) ineffective assistance of trial counsel for counsel's failure to adequately communicate the plea agreement and the subsequent penalty; and (3) ineffective assistance of trial counsel for (a) counsel's failure to keep Petitioner fully informed, through the court-appointed interpreter, of the court

_____

[1] Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Walter A. McNeil is substituted for James R. McDonough as the proper party Respondent having custody over Petitioner.

proceedings and (b) counsel's failure to read Petitioner's letter to the sentencing judge.

Respondents have responded.   See Respondents' Answer in Response to Order to Show Cause (Doc. #11) (hereinafter Response). In support of their contentions, they have submitted exhibits.[2] Petitioner was given admonitions and a time frame to respond.   See Court's Order to Show Cause and Notice to Petitioner (Doc. #5). Petitioner has not responded, but has been given adequate time to do so.   This case is now ripe for review.

## II. Procedural History

On May 1, 1997, Petitioner was charged with one count of first degree murder and one count of aggravated child abuse.   Ex. A, Indictment.   On January 3, 2003, Petitioner, in a written plea agreement with the State of Florida, entered a guilty plea to the lesser offense of second degree murder on count one.   Ex. B at 36-38, Plea of Guilty and Negotiated Sentence.   The State of Florida agreed to abandon count two.   Id. at 36.   The agreement called for the court to determine the sentence, but set forth a range of no imprisonment to ten years of imprisonment.   Id.

The court conducted a plea hearing on January 3, 2003, at which an interpreter conferred with Petitioner during the plea colloquy.   Id. at 44-62, Transcript of the Plea Hearing (hereinafter Plea Tr.).   After the colloquy and the recitation of

---

[2] The Court will hereinafter refer to Respondents' exhibits, attached to their Response, as "Ex."

a factual basis for the plea, the court found that a factual basis for the plea existed and that the plea was freely and voluntarily entered with a full understanding of the charges and the consequences of the plea and the possible sentences. Id. at 61. Thus, the court accepted the plea. Id.

On March 14, 2003, the court conducted a sentencing hearing. Id. at 64-125, Transcript of the Sentencing Hearing (hereinafter Sentencing Tr.). At the conclusion of the sentencing hearing, the court adjudged Petitioner guilty of second degree murder and sentenced her to ten years of imprisonment. Id. at 124-25. The written judgment and sentence, rendered on March 14, 2003, was consistent with the oral pronouncement. Id. at 39-43. Petitioner did not appeal the judgment and sentence to the appellate court.

On September 5, 2003, Petitioner filed a *pro se* motion for post conviction relief pursuant to Fla. R. Crim. P. 3.850, raising three grounds of ineffectiveness of counsel. Id. at 1-16. On December 15, 2005, Petitioner filed a Motion to Rule, and on February 15, 2006, she filed a Petition for Writ of Mandamus. Id. at 17-23. On May 12, 2006, the trial court, in a written order, denied the motion for post conviction relief. Id. at 28-126.

Petitioner appealed the denial of the motion to the appellate court. Id. at 127. According to the court's docket (Ex. C), neither the State nor Petitioner filed a brief. On November 6, 2006, the appellate court per curiam affirmed without issuing a

3

written opinion.  Hor v. State, 944 So.2d 352 (Fla. 1st DCA 2006);
Ex. D.  Petitioner's motion for rehearing was denied.  Ex. E; Ex.
F.  The mandate was issued on December 29, 2006.  Ex. G.

     The Petition is timely filed within the one-year period of
limitation.  See 28 U.S.C. § 2244(d); Response at 3-5.

### III. Evidentiary Hearing

     "In deciding whether to grant an evidentiary hearing, a
federal court must consider whether such a hearing could enable an
applicant to prove the petition's factual allegations, which, if
true, would entitle the applicant to federal habeas relief."
Schriro v. Landrigan, 127 S.Ct. 1933, 1940 (2007) (citation
omitted).  "It follows that if the record refutes the applicant's
factual allegations or otherwise precludes habeas relief, a
district court is not required to hold an evidentiary hearing."
Id.

     This Court has carefully reviewed the record and concludes
Petitioner is not entitled to an evidentiary hearing.  The
pertinent facts of the case are fully developed in the record
before the Court.  Smith v. Singletary, 170 F.3d 1051, 1054 (11th
Cir. 1999).  Thus, the Court can "adequately assess [Petitioner's]
claim[s] without further factual development."  Turner v. Crosby,
339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034
(2004).  Therefore, an evidentiary hearing will not be conducted by
this Court.

### IV.  Standard of Review

Since this action was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA), April 24, 1996, the Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as amended by AEDPA.  Nelson v. Alabama, 292 F.3d 1291, 1294-95 (11th Cir. 2002), cert. denied, 538 U.S. 926 (2003); Fugate v. Head, 261 F.3d 1206, 1215 n.10 (11th Cir. 2001), cert. denied, 535 U.S. 1104 (2002); Wilcox v. Florida Dep't of Corr., 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000).  Under AEDPA, however, the review "is 'greatly circumscribed and highly deferential to the state courts.' Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002)." Stewart v. Sec'y, Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007).

The Eleventh Circuit has explained this deferential review:

> [Section] 2254(d) allows federal habeas relief for a claim adjudicated on the merits in state court only if the state court adjudication resulted in a decision that was:  "(1) . . . contrary to, or involved an unreasonable[3] application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d);

---

[3] "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007) (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

> Marquard, 429 F.3d at 1303.   The phrase
> "clearly established Federal law," as used in
> § 2254(d)(1), encompasses only the holdings,
> as opposed to the dicta, of the United States
> Supreme Court as of the time of the relevant
> state court decision.   See Carey v. Musladin,
> 549 U.S. —, 127 S.Ct. 649, 653, 166 L.Ed.2d
> 482 (2006) (citing Williams v. Taylor, 529
> U.S. 362, 412, 120 S.Ct. 1495, 1523, 146
> L.Ed.2d 389 (2000)); Osborne v. Terry, 466
> F.3d 1298, 1305 (11th Cir. 2006).

Stewart, 476 F.3d at 1208-09.

"AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' §2254(e)(1)."  Schriro, 127 S.Ct. at 1939-40 (footnote omitted). This presumption of correctness applies equally to factual determinations made by state trial and appellate courts."  Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling.   Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003).   See Peoples v. Campbell, 377 F.3d 1208, 1227 (11th Cir. 2004), cert. denied, 545 U.S. 1142 (2005).   Thus, to the

extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under the new § 2254(d).

## V. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel.  That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted).  The Eleventh Circuit captured the essence of an ineffectiveness claim:

> The clearly established federal law for ineffective assistance of counsel claims was set forth by the U.S. Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  To establish a claim of ineffective assistance of counsel, first, "the defendant must show that counsel's performance was deficient . . . [which] requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687, 104 S.Ct. at 2064.  Second, the defendant must show that counsel's deficient performance prejudiced him.  Id.  That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. at 2068.

Gaskin v. Sec'y, Dep't of Corr., 494 F.3d 997, 1002 (11th Cir. 2007).  "Establishing these two elements is not easy: 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" Van

Poyck v. Florida Dep't of Corr., 290 F.3d 1318, 1322 (11th Cir. 2002) (per curiam) (citations and footnote omitted), cert. denied, 537 U.S. 812 (2002), 537 U.S. 1105 (2003).

The Eleventh Circuit stated:

> The Supreme Court has established certain principles and presumptions to guide our review of ineffectiveness claims under the flexible, case-specific standards of Strickland. We engage only in a "highly deferential" review of counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689, 104 S.Ct. at 2065 (quotation omitted). As a result of this presumption, a petitioner must show "that no competent counsel would have taken the action that his counsel did take." Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc). Thus, "where the record is incomplete or unclear about [counsel]'s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment." Id. at 1314 n. 15 (quoting Williams v. Head, 185 F.3d 1223, 1228 (11th Cir. 1999)). Moreover, because the standard is an objective one, trial counsel's admission that his performance was deficient "matters little." Id. at 1315 n.16. We must also avoid "the distorting effects of hindsight" and evaluate the reasonableness of counsel's performance from the perspective of counsel at the time the acts or omissions were made. Strickland, 466 U.S. at 689, 104 S.Ct. at 2065.

Jennings v. McDonough, 490 F.3d 1230, 1243-44 (11th Cir. 2007).

In Hill v. Lockhart, 474 U.S. 52, 58-59 (1985) (footnote omitted), the Court held:

that the two-part <u>Strickland v. Washington</u>
test applies to challenges to guilty pleas
based on ineffective assistance of counsel.
In the context of guilty pleas, the first half
of the <u>Strickland v. Washington</u> test is
nothing more than a restatement of the
standard of attorney competence already
set forth in <u>Tollett v. Henderson</u>, <u>supra</u>, and
<u>McMann v. Richardson</u>, <u>supra</u>. The second, or
"prejudice," requirement, on the other hand,
focuses on whether counsel's constitutionally
ineffective performance affected the outcome
of the plea process. In other words, in order
to satisfy the "prejudice" requirement, the
defendant must show that there is a reasonable
probability that, but for counsel's errors, he
would not have pleaded guilty and would have
insisted on going to trial.

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Petitioner claims counsel was ineffective for

coercing her to plead guilty. Specifically, she alleges defense

counsel told her she would receive a non-prison sentence if she

pled guilty and also persuaded her to have an abortion, explaining

that otherwise she would receive a prison sentence. As

acknowledged by the parties, Petitioner raised this claim in her

Rule 3.850 motion. In denying this claim on the merits, the trial

court identified the two-prong <u>Strickland</u> ineffectiveness test as

the controlling law and stated in pertinent part:

In the first ground for relief, the
Defendant claims that her plea was
involuntary. According to the Defendant,
counsel coerced her to plead guilty.
Specifically, the Defendant alleges counsel
told her that she would receive a non-prison
sentence if she pled guilty, and also

persuaded her to have an abortion, explaining that otherwise she would receive a prison sentence.    To the extent to which the Defendant argues that she was coerced by counsel to plead guilty, the claim is refuted by the record. During the plea hearing, the Defendant stated that no one had forced her to plead guilty against her will. (Exhibit "C," page 11.) When asked by the Court, the Defendant answered that counsel had not forced her to plead guilty, and none of her attorneys had threatened to withdraw from the case if she did not plead guilty. (Exhibit "C," pages 11-13.)   In addition, the Defendant stated that she had no complaints about counsel's representation, and none of her attorneys had done anything improper. (Exhibit "C," page 13.) The Defendant may not seek to go behind her sworn testimony in a post conviction motion. <u>Stano v. State</u>, 520 So.2d 278 (Fla. 1988); <u>Dean v. State</u>, 580 So.2d 808 (Fla. 3d DCA 1991); <u>Bir v. State</u>, 493 So.2d 55 (Fla. 1st DCA 1986). Accordingly, the Defendant's claim is denied.

To the extent to which the Defendant claims that she pled guilty only because counsel told her that she would get a non-prison sentence, the claim is again refuted by the record. During the plea hearing, the Defendant stated that no one had promised her a specific sentence, and she understood she could receive a sentence between zero (0) and ten (10) years in prison. (Exhibit "C," page 12.) The Defendant may not seek to go behind her sworn testimony in a post conviction motion. <u>Stano</u>, 520 So.2d 278; <u>Dean</u>, 580 So.2d 808; <u>Bir</u>, 493 So.2d 55. Accordingly, the Defendant's claim is denied.

Ex. B at 29-30.

As previously noted, the appellate court per curiam affirmed. Accordingly, this ground was rejected on the merits by the state trial and appellate courts.  Thus, there are qualifying state court

decisions.    This   ineffectiveness   ground   should   be   addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA.  Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

This Court also finds this ground to be without merit.   In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence.  The presumption that Mr. William J. Sheppard's performance was reasonable is even stronger since he is an experienced criminal defense attorney.[4]  The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the

---

[4] "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger."  Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc), cert. denied, 531 U.S. 1204 (2001); see Williams v. Head, 185 F.3d 1223, 1229 (11th Cir. 1999) (noting that "[i]t matters to our analysis" whether the attorney is an experienced criminal defense attorney), cert. denied, 530 U.S. 1246 (2000).  Mr. William J. Sheppard was admitted to the Florida Bar in 1968, is board certified, since 1987, in the area of criminal trials and is a member of the appellate practice, criminal law and trial lawyer sections of the Florida Bar.  See http://www.floridabar.org.

wide range of professionally competent assistance." <u>Strickland</u>,
466 U.S. at 690.  "[H]indsight is discounted by pegging adequacy to
'counsel's perspective at the time' . . . and by giving a 'heavy
measure of deference to counsel's judgments.'" <u>Rompilla v. Beard</u>,
545 U.S. 374, 381 (2005) (citations omitted).  Thus, Petitioner
must establish that no competent attorney would have taken the
action that counsel, here, chose.  <u>United States v. Freixas</u>, 332
F.3d 1314, 1319-20 (11th Cir. 2003).  Petitioner has not shown
deficient performance on the part of counsel.

As previously noted, a plea hearing was conducted on January
3, 2003.  Petitioner was represented by Mr. Sheppard at the plea
hearing.  The prosecutor (Ms. Wright) noted that the defense had
their own interpreter for Petitioner[5], but that Mike Nou (the
court-appointed interpreter) would interpret the plea proceeding.
Plea Tr. at 48.  The court's deputy clerk administered the
interpreter's oath to Mr. Nou.  <u>Id</u>.  Mr. Sheppard stated:

> If it please the Court.  Before the Court
> is Laksmey Hor in Case No. 97-3635-CFA.  At
> this time we would move to withdraw the
> previously entered plea of not guilty to count
> one of the Information and at this time enter

---

[5] Ms. Kunthear Mam-Douglas was the defense's interpreter.
Petition at 24-25; Plea Tr. at 48, 55, 58-59; Sentencing Tr. at 69-
70, 105-10. Ms. Mam-Douglas, on cross-examination at the sentencing
hearing, testified that she was present at the plea hearing, and
although Mr. Nou was translating the proceedings, she confirmed
that everything was properly translated that day.  Sentencing Tr.
at 109-10.  Since the trial judge referred to her as Ms. Douglas at
the plea hearing, she will hereinafter be referred to as Ms.
Douglas.

a plea of guilty to the offense of murder in
the second degree for the reason that it is in
Ms. Hor's best interest to do so.

Your Honor, there have been negotiations
in this case and those negotiations have been
written up in the Plea of Guilty and
Negotiated Sentence Form and are that in
exchange for this plea the defendant can be
sentenced anywhere from probation to a cap of
ten years, of course, with credit for time
served, which is 477 days, that there will be
felony court costs and fees in the amount of
253 dollars, and restitution in the amount of
2,865 dollars, and that the State will abandon
count two of the -- I said Information.   I
think it's an Indictment so I would ask that
that be corrected.   And I believe that that
summarizes the negotiations in the plea.

Id. at 48-49.

Mr. Sheppard noted that the negotiations were memorialized on
a Plea of Guilty and Negotiated Sentence Form, which was signed by
Mr. Sheppard, the prosecutor and Petitioner Hor.   Id. at 50.   The
trial judge explained that Mr. Sheppard had entered a plea of
guilty on her behalf to the charge of second degree murder, a crime
punishable by up to life imprisonment and under the terms of her
negotiated sentence, she "could be sentenced to serve up to ten
years in the state prison."   Id. at 50-51.   The trial judge asked
Petitioner if her plea of guilty to second degree murder was
entered with her knowledge and consent.   Id. at 51.   She answered
in the affirmative.   Id.   The trial judge informed her that, by
pleading guilty, she would give up certain constitutional rights,
and Petitioner affirmed that she understood that, by pleading

guilty, she would give up those stated constitutional rights.  <u>Id</u>. at 51-52.  Petitioner confirmed that it was in her best interest to enter the guilty plea and that no one forced her to plead guilty against her will.  <u>Id</u>. at 53-54.  Further, Petitioner agreed that no one such as her husband, defense counsel or Ms. Douglas had forced her to enter the guilty plea against her will.  <u>Id</u>. at 54.

Petitioner affirmed that she had signed the Plea of Guilty and Negotiated Sentence Form.  <u>Id</u>.  Acknowledging that the form was in English, the trial judge inquired as to whether someone had read the form to Petitioner.  <u>Id</u>.  Petitioner stated that Ms. Douglas reviewed the form with her.  <u>Id</u>. at 55.  The trial judge explained to Petitioner Hor that "under [her] plea agreement there is not a specific sentence other than the maximum sentence of ten years in prison."  <u>Id</u>.  She affirmed that she understood.  <u>Id</u>.  She confirmed that no one had told her that she would receive a specific sentence as a result of the plea.  <u>Id</u>.  She further acknowledged that no one in counsel's office or counsel himself had told her that they would no longer represent her if she did not plead guilty.  <u>Id</u>. at 55-56.

The court also inquired as to whether Petitioner Hor was satisfied with the representation of Mr. Sheppard and those within his office.  The following colloquy ensued.

> THE COURT: Mr. Sheppard and Mr. Thomas have been representing you for a few years now.  Do you have any complaints about their services?

14

(Interpreter conferring with defendant.)

INTERPRETER NOU: No, Your Honor.

THE COURT: Have they failed to do anything you think they should have done?

(Interpreter conferring with defendant.)

INTERPRETER NOU: No, Your Honor.

THE COURT: Have they done anything that you think they should not have done?

(Interpreter conferring with defendant.)

INTERPRETER NOU: No, Your Honor.

Id. at 56.

The prosecutor asked the trial judge the following:

> I might ask if the Court would allow us at the end just to put on Madam Douglas to have her recite that she feels everything was interpreted properly and that she talked with Mr. Sheppard to explain the form. I just want to make that clear. It kind of is left implied that she explained the form without Mr. Sheppard. I want to make that clear. That is the only thing.

Id. at 57-58. The trial judge then directed the court's deputy

clerk to administer the interpreter's oath to Ms. Douglas. Id. at

58. The following colloquy ensued.

THE COURT: Thank you for being here. I know it's been an inconvenience over these years.

Would you state your full name?

INTERPRETER DOUGLAS: Tiaman (phonetically) Douglas.

THE COURT: Ms. Douglas, you served as translator today for Madam Hor, is that correct?

INTERPRETER DOUGLAS: Yes, sir.

THE COURT: I'm holding before me a three-page document that has Ms. Hor's signature and Mr. Sheppard's signature at the end.  Did you interpret or translate this form for her before she signed it?

INTERPRETER DOUGLAS: I have translated it to her, yes.  I have done a number of times just to make sure that she understand.

THE COURT: Okay.  That was done in the presence of Mr. Sheppard and under his direction, is that correct?

INTERPRETER DOUGLAS: Yes, sir, and also another –

MR. SHEPPARD: Mr. Kachergus.

THE COURT: Kachergus.  Thank you.

Id. at 58-59.

At the direction of the trial judge, the prosecutor (Ms. Wright) set forth a factual basis for the plea.

The defendant is pleading to second degree murder, which is a lesser included offense to count one of the Indictment of first degree murder.

Should this case have proceeded to trial, the State would be prepared to prove that on or between the 10th day of March, 1997, and the 11th day of March, 1997, in the County of Duval and the State of Florida, this defendant did at her own home where she was baby-sitting a small child, the victim in this case named Julie Im, the defendant provided child care for Julie Im.  And the last name is spelled I-M.  Julie was approximately five months old at the time.  On the morning of March 10th, we

16

expect the evidence would show that her parents, Julie's parents, brought her to the defendant's home to be baby-sat and that Julie at that time was in good health. We would also expect the evidence to show that throughout the day the defendant was the only adult in her home while Julie Im was being baby-sat. The only other person present was this defendant's toddler, her own child, who was about two at the time.

We also expect the evidence to show that at some point during the day the victim, Julie Im, suffered what was ultimately -- what were ultimately mortal wounds, including massive skull fracture, bleeding on the brain and retinal hemorrhaging and brain swelling, which ultimately resulted in her death after she languished for a few days and died on March 12th.

We would expect to prove that this defendant did unlawfully and by an act imminently dangerous to another, Julie Im, and evincing a depraved mind regardless of human life, without a premeditated design to kill, did, in fact, kill Julie Im without the premeditated intent, a human being, by inflicting or allowing by negligence wounds to be inflicted to her head, contrary to the provisions of Section 782.04 paren 2 Florida Statutes.

Id. at 59-61. Thus, the trial judge accepted the plea and found that a factual basis existed for the plea and that the Petitioner freely and voluntarily entered the plea of guilty with a full understanding of the nature of the charges, the consequences of the plea and the maximum possible sentence. Id. at 61.

Although a defendant's statements during the plea colloquy are not insurmountable, the Supreme Court held in Blackledge v. Allison, 431 U.S. 63, 73-74 (1977), that "the representations of

the defendant [at a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity."  Here, based upon the record before this Court, Petitioner has not overcome this barrier.

Further, in response to Petitioner's Florida Bar complaint against defense counsel, Mr. Sheppard responded to the Florida Bar, stating in pertinent part:

> The complaint contains numerous false and misleading assertions.  Initially, it must be understood that Mrs. Hor was arrested and prosecuted on a charge of first degree murder (not second degree murder) in connection with the death of a seven-month old baby left in her care on March 12, 1997.  We were engaged to represent Mrs. Hor, to succeed predecessor counsel, a little over one year after her arrest.  At that point, I realized that the case was far from ready for trial and was successful in obtaining her release on bond, an exceedingly rare accomplishment in a first degree murder case, after she had been in custody for 477 days.  A great deal of further litigation, investigation and discovery followed, including litigation for a motion to suppress statements based on issues of language, culture and translation.
>
> I never assured Mrs. Hor that she would receive a non-prison sentence under any circumstance.  I certainly would not do so in any case such as this with a client charged with first degree murder, for which a mandatory life sentence would be imposed upon conviction in the absence of the State seeking a potential death sentence.  The case was particularly aggravated because the victim was a baby who suffered severe brain and skull injuries.

18

Mr. Hor, shortly after she was released on bond, disclosed to me that he had become pregnant. I believe that was in the second half of 1998 or in early 1999. At that time, there was no tentative sentencing date and, in fact, the matter was still deeply involved in discovery and pretrial litigation with no meaningful plea discussions occurring with the State at that stage. Plea discussions between counsel did not begin seriously until May 2001, when the State offered a 15-year cap, to which Mrs. Hor would not agree.

In regard to her pregnancy, I informed Mrs. Hor that her pregnancy and/or delivery of a child would be viewed negatively by both the judge and the prosecutor, who would naturally be highly concerned that another baby in her care would be placed at great risk. However, I certainly did not tell Mrs. Hor that she would go to prison if the Court learned of her pregnancy and would receive a non-prison sentence if the Court did not learn of her pregnancy. In this case, from beginning to end, the overwhelming likelihood was that Mrs. Hor would receive a prison sentence, and while I vigorously challenged the prosecution's case, both as to culpability and as to potential penalty, that likelihood is difficult to overcome when the prosecution is one for first degree murder for the death of a baby from injuries which, according to all medical opinions, occurred while the baby was in Mrs. Hor's care, and I conveyed that to Mrs. Hor.

Ultimately, negotiations with the prosecution commenced, although any conversations regarding a plea agreement had been largely unproductive prior to late 2002. Numerous discussions with Mrs. Hor regarding the case, including matters relating to a potential plea agreement, were conducted with the assistance of a confidential interpreter fluent in her dialect of the Cambodian language. The Assistant State Attorney made clear that she sought a long prison term, even when issues regarding the admissibility of Mrs. Hor's statements to police were under

challenge with our pending motion to suppress. In fact, on many occasions, the prosecutor stated that she believed she would be able to obtain a first degree murder conviction even if we prevailed on the motion to suppress statements. However, it must be remembered that the issue of Mrs. Hor's pregnancy, and my discussions with her regarding the potential adverse effect of the pregnancy on the outcome of her case, occurred long before any meaningful discussions regarding a possible plea ever occurred with the prosecutor, and occurred approximately four years prior to entry of her guilty plea to a charge of second degree murder on January 3, 2003, and sentencing on March 14, 2003.

Initially, the State wanted Mrs. Hor to plead to a cap of 15 years. However, by litigating the motion to suppress for over a year, I was able to obtain a plea agreement that offered a sentencing range of zero to ten years. The possibility of a plea to manslaughter was discussed, but such a plea would have resulted in a best case scenario of a finite term of probation, during or following which Mrs. Hor clearly would be subject to deportation to Cambodia. We had reason to believe that a possibility existed that Mrs. Hor might not be deported while on probation, and so we entered a plea, with Mrs. Hor's full knowledge and understanding, to a charge of second degree murder in order that we be able to try to obtain a sentence of lifetime probation, which afforded at least a possibility that she might avoid deportation because she would be serving an active sentence. The plea agreement as reached gave us the opportunity to seek that result from the Court. However, following a contested sentencing hearing, the Court imposed a sentence of ten years incarceration.

Enclosed herewith please find copies of the indictment, charging first degree murder and aggravated child abuse, and the transcript of the sentencing hearing, which establishes

some of the adverse medical and other issues
we faced in Mrs. Hor's case.[6]

I reiterate that at no time did I, nor
would I in any such case, have given
assurances of a non-prison sentence for Mrs.
Hor.  No reasonable attorney would do so in
such a case.  I advised her that carrying a
pregnancy and having another child could make
matters even more difficult in regard to a
potential outcome than they already were, but
certainly did not tell her or even suggest to
her that terminating the pregnancy would
result in her avoiding a prison sentence.  I
was not even in the position to have that
specific discussion with her because she
advised me of her pregnancy long prior to any
meaningful discussions with the prosecution
regarding a potential negotiated plea, much
less the setting of any actual or tentative
date for a change of plea hearing or
sentencing.

For the foregoing reasons, Mrs. Hor's
complaint completely lacks merit and should be
dismissed. . . .

Petition, attached Petitioner's Exhibit F, Mr. Sheppard's Response

to the Florida Bar, dated November 17, 2003.

Even assuming *arguendo* that counsel's performance was

deficient, Petitioner has not shown prejudice.  Petitioner Hor

faced a first degree murder charge, which carried a sentence of

life imprisonment in the absence of the State's seeking a potential

---

[6] Dr. McIntosh testified that "[t]he diagnosis was that the
child had died, or was seriously ill and in danger of dying, from
a non-accidental head injury, that is an injury that was a result
of child abuse."  Sentencing Tr. at 82.  He noted that "a powerful
degree of force was involved in producing the head injury."  Id. at
81, 83, 86.  He concluded that it "is the kind of injury that we
often see in babies who are shaken as well as slammed."  Id. at 83.

death sentence.   She also faced an aggravated child abuse charge,
which the State abandoned when she entered the guilty plea to
second degree murder.   Ex. B at 36.   And, as noted by the trial
judge, the crime of second degree murder is punishable by up to
life imprisonment; however, under the terms of the negotiated plea
agreement, she could face a sentence in the range of zero to ten
years of imprisonment.   Plea Tr. at 51, 55.   As noted by Mr.
Sheppard, the defense faced adverse medical and other issues if
they had proceeded to trial.[7]   Mr. Sheppard also expressed his
concern that the prosecutor had stated on many occasions that she
believed she would be able to obtain a first degree murder
conviction even if the defense prevailed on the motion to suppress
statements.   Clearly, Petitioner voluntarily, intelligently and
freely entered the plea of guilty to second degree murder because
it was in her best interest, not because of any coercion on the
part of defense counsel.   She confirmed this at the plea hearing.
Petitioner has not shown the resulting prejudice.   Thus, the
ineffectiveness claim must fail.

### B. Ground Two

As ground two, Petitioner claims that counsel was ineffective
for failure to adequately communicate the plea agreement and the
subsequent penalty.   In this claim, Petitioner alleges that defense

---

[7] Mr. Sheppard noted that the baby victim had severe brain and
skull injuries.   Further, he was concerned about the pending motion
to suppress statements.

counsel told her to forego the State's plea offer to manslaughter,

and instead to plead guilty to second degree murder, which counsel

allegedly told her would result in a non-prison sanction, which

would prevent her deportation.  Petitioner also claims that the

State failed to set forth the factual basis for second degree

murder.

As acknowledged by the parties, Petitioner raised this claim

in her Rule 3.850 motion.  In denying this claim on the merits, the

trial court identified the two-prong <u>Strickland</u> ineffectiveness

test as the controlling law and stated in pertinent part:

> In the second ground for relief, the
> Defendant claims that counsel rendered
> ineffective assistance by failing to
> communicate to her the consequences of her
> plea. According to the Defendant, counsel told
> her to forego the State's plea offer of
> Manslaughter with Culpable Negligence, and
> plead instead to Second-Degree Murder, in
> order to get a non-prison sentence and avoid
> deportation. However, the Defendant claims
> that counsel did not tell her that the plea
> could result in a harsher sentence.
> (Defendant's Motion at 8.) The Defendant
> claims that had she known that she would get a
> prison sentence, she would not have pled
> guilty and would have proceeded to trial.
> (Defendant's Motion at 8.) The Defendant's
> claim is not supported by the record. During
> the plea hearing, the Defendant stated that
> she understood that she could receive a
> sentence within a range of zero (0) to ten
> (10) years in prison, and admitted that no one
> had told her that she would receive a specific
> sentence. (Exhibit "C," page 12.) The
> Defendant may not seek to go behind her sworn
> testimony in a post conviction motion. <u>Stano</u>,
> 520 So.2d 278; <u>Dean</u>, 580 So.2d 808; <u>Bir</u>, 493
> So.2d 55. Accordingly, the Defendant's claim
> is denied.

> To the extent to which it is
> comprehensible, the Defendant also claims that
> the State did not present a sufficient factual
> basis for her plea to Second-Degree Murder.
> This Court notes that the record conclusively
> refutes this claim. During the plea hearing,
> the State set out the facts of the case and
> stated the following:
>
>> We would expect to prove that this
>> defendant did unlawfully and by an
>> act imminently dangerous to another,
>> Julie Im, and evincing a depraved
>> mind regardless of human life,
>> without premeditated design to kill,
>> did, in fact, kill Julie Im without
>> the premeditated intent, a human
>> being, by inflicting or allowing by
>> negligence wounds to be inflicted to
>> her head, contrary to the provisions
>> of Section 782.04 paren 2 Florida
>> Stat[ut]es.
>
> (Exhibit "C," pages 16-18.) <u>See</u> Section
> 782.04(2), Florida Statutes (1996).
> Accordingly, the Defendant's claim is denied.

Ex. B at 30-31.

As previously noted, the appellate court per curiam affirmed. Accordingly, this ground was rejected on the merits by the state trial and appellate courts. Thus, there are qualifying state court decisions. This ineffectiveness ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA. Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable

application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

This Court also finds this ground to be without merit.[8] Petitioner has not shown deficient performance on the part of counsel.  The record reflects that counsel adequately communicated the plea agreement and the subsequent penalty.  Further, the trial judge, in accepting her guilty plea to second degree murder, informed her that the plea agreement permitted her to be sentenced to serve "up to ten years in state prison."  Plea Tr. at 51.  He further informed her that "under [the] plea agreement there is not a specific sentence other than the maximum sentence of ten years in prison."  Id. at 55.  Petitioner affirmed that she understood and that the plea agreement was entered with her knowledge and consent. Id. at 51, 55.  And, the prosecutor's inadvertent use of the term "negligence" in setting forth the factual basis of the plea did not render Petitioner's plea involuntary.   It is noteworthy that defense counsel had agreed to stipulate to the facts underlying the plea.  Id. at 59.

_____

[8] As previously stated, although a defendant's statements during the plea colloquy are not insurmountable, "the representations of the defendant [at a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).  Here, based upon the record before this Court, Petitioner has not overcome this barrier.

Further, as noted by Mr. Sheppard in his response to the Florida Bar complaint against him, he explained in pertinent part:

> The possibility of a plea to manslaughter was discussed, but such a plea would have resulted in a best case scenario of a finite term of probation, during or following which Mrs. Hor clearly would be subject to deportation to Cambodia. We had reason to believe that a possibility existed that Mrs. Hor might not be deported while on probation, and so we entered a plea, with Mrs. Hor's full knowledge and understanding, to a charge of second degree murder in order that we be able to try to obtain a sentence of lifetime probation, which afforded at least a possibility that she might avoid deportation because she would be serving an active sentence. The plea agreement as reached gave us the opportunity to seek that result from the Court. However, following a contested sentencing hearing, the Court imposed a sentence of ten years incarceration.

Petition, attached Petitioner's Exhibit F, Mr. Sheppard's Response to the Florida Bar, dated November 17, 2003. The plea hearing transcript and the plea agreement itself reflect that Petitioner was fully advised and informed of the maximum sentence she faced and that she could be sentenced anywhere from zero years to ten years in the state prison.

Even assuming *arguendo* that counsel's performance was deficient, Petitioner has not shown the resulting prejudice. See Section A. Ground One. As stated by the trial judge, in accepting her guilty plea to second degree murder, a factual basis existed for the plea and Petitioner freely and voluntarily entered the guilty plea with a full understanding of the nature of the charges, the consequences of the plea and the maximum possible sentence

(zero to ten years).  Plea Tr. at 61.  As acknowledged by both counsel and Petitioner herself at the plea hearing, she entered the plea because it was in her best interest.  Thus, the ineffectiveness claim must fail.

## C. Ground Three

As ground three, Petitioner claims counsel was ineffective for failure to keep Petitioner fully informed, through the court-appointed interpreter, of the court proceedings and for failure to read Petitioner's letter to the sentencing judge.  Specifically, Petitioner alleges that the court-appointed interpreter had left the room during the plea proceeding, at which time her counsel informed the court of the terms of the plea agreement.  Further, Petitioner states that counsel repeated the terms of the plea agreement after the interpreter returned.  Petitioner claims that this second recitation of the terms, which was translated to her, was different than the first recitation, and that this difference was pertinent to her decision to enter a guilty plea.  And, finally, Petitioner contends that counsel failed to have her letter read by the interpreter during the sentencing hearing.

As acknowledged by the parties, Petitioner raised this claim in her Rule 3.850 motion.  In denying this claim on the merits, the trial court identified the two-prong Strickland ineffectiveness test as the controlling law and stated in pertinent part:

> In the third ground for relief, the Defendant claims that she received ineffective

27

assistance when counsel failed to keep her informed of court proceedings. According to the Defendant, counsel failed to provide the interpreter with a synopsis of what transpired during the brief time when the interpreter was absent from the plea hearing. The Defendant claims that the terms of the plea, including the fact that she faced a possible sentence of ten (10) years in prison, were discussed during the time the interpreter was absent, and counsel did not tell her prior to the sentencing hearing that she was facing a sentence within this range. (Defendant's Motion at 10-11.) This claim is knowingly false and frivolous. The record shows that the discussion that took place while the interpreter was absent was not part of the plea colloquy. (Exhibit "C," pages 4-5.) In fact, the terms of the plea were repeated when the interpreter returned to the courtroom, and he translated everything for the Defendant. (Exhibit "C," pages 8, 12.) At that time, the Defendant stated that she understood that she faced a sentence between zero (0) and ten (10) years in prison. (Exhibit "C," page 12.) In addition, the Defendant stated that her own translator had read the plea form to her, and the translator confirmed this statement. (Exhibit "C," at 11-12, 15.) Accordingly, the Defendant has failed to establish either error on the part of counsel or prejudice to her case. <u>Strickland</u>, 466 U.S. 668; <u>Hill</u>, 474 U.S. 52. Therefore, the Defendant's claim is denied.

In the third ground for relief, the Defendant also claims that she received ineffective assistance when counsel did not object to the interpreter's translation of a letter in which the Defendant expressed her remorse. (Defendant's Motion at 11-12.) According to the Defendant, the court interpreter did not read the letter, but presented his own translation. In addition, the Defendant claims that counsel did not inform her that he and the interpreter had decided to provide this allegedly inaccurate translation. Had she known this, the Defendant claims that she would have asked a friend to

28

read the letter as written. (Defendant's
Motion at 11-12.)

       To the extent to which the Defendant
claims that counsel was ineffective for
failing to ensure a correct translation was
presented to the Court, the claim is refuted
by the record. Initially, this Court notes
that the record does not show that a letter
was read to the Court during the plea and
sentencing proceedings. During the sentencing,
a letter was mentioned; however, its author
and language are not specified. It appears
that counsel forwarded a letter to the Court,
and the Court attached it to the Presentencing
Investigation Report (PSI). (Exhibit "D,"
pages 47-48.)[9] The letter was not read in
court, as the Defendant alleges in the instant
claim, but counsel summarized some issues
during the sentencing proceedings. (Exhibit
"D," pages 48-50.)[10] There is no indication
that the letter was written in a foreign
language, and no translation took place during
these proceedings.  The Defendant made a
statement in court, but there is no indication
that it came from a letter. (Exhibit "D," page
55.)[11] In addition, the Defendant has not
established that counsel understood her
language and could assess the accuracy of the
translation. Accordingly, the Defendant has
failed to establish error on the part of
counsel. <u>Strickland</u>, 466 U.S. 668.


       . . . .

       Assuming, *arguendo,* that the claim [(that she
was deprived of the opportunity to be heard)]
is properly filed pursuant to Florida Rule of
Criminal Procedure 3.850, the Defendant's
allegation is refuted by the record. At the

---

       [9] <u>See</u> Sentencing Tr. at 110-11.

       [10] <u>See</u> Sentencing Tr. at 111-13.

       [11] Petitioner Hor testified that she was "so sorry" that Julie
Im had passed away, that she loved Julie like one of her own and
that she was "really sorry."  <u>See</u> Sentencing Tr. at 118.

> sentencing hearing, the Defendant had the
> opportunity to make a statement, which was
> translated by the court interpreter. (Exhibit
> "D," page 55.) The Defendant does not
> challenge this particular statement, and does
> not identify any translation inaccuracies that
> would amount to a denial of her right to be
> heard. Accordingly, the Defendant's claim is
> denied.

Ex. B at 31-33.

As previously noted, the appellate court per curiam affirmed. Accordingly, this ground was rejected on the merits by the state trial and appellate courts and should be addressed applying the deferential standard for federal court review of state court adjudications.  Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

This Court also finds this ineffectiveness ground to be without merit.  Petitioner has not shown deficient performance on the part of counsel.  Petitioner refers to the following colloquy at the plea hearing.

> THE COURT: Let's call the case of State
> of Florida versus Laksmey Hor, middle of page
> 1.  Mr. Sheppard, is there an announcement
> here?

MR. SHEPPARD: There will be, Your Honor. The interpreter went to get his eyeglasses. After we do that were [sic] ready to go, so hopefully he'll be back in a matter of moments.

MS. WRIGHT: I think we can talk about what's going to happen **before we start the plea dialogue.**

MR. SHEPPARD: Sure.  No problem with that.  Your Honor, what we intend to do is enter a plea of guilty, a negotiated sentence, which would be a plea to second degree murder with a cap of ten years with credit for 477 days.  And what we had talked about is there are several witnesses whose schedules I need to address for the sentencing and what we thought is if we could pass the case after we entered the plea here today until next Thursday, I think it was.

THE COURT: Yes, sir.

MR. SHEPPARD: Where I could figure out what everybody's schedule is and come back to pin down any sentencing date.

THE COURT: Yes, sir.

MR. SHEPPARD: And that's what's envisioned here and as soon as the interpreter gets here we'll be ready.

THE COURT: Yes, sir, that's fine.

Plea Tr. at 47-48 (emphasis added).  As noted by the trial court, the above-cited discussion that occurred while the interpreter was absent was not part of the plea colloquy.

After the interpreter's oath was administered to Mr. Nou, Mr. Sheppard began the plea proceeding with the following announcement.

If it please the Court.  Before the Court is Laksmey Hor in Case No. 97-3635-CFA.  At

31

> this time we would like to move to withdraw
> the previously entered plea of not guilty to
> count one of the [Indictment] and at this time
> enter a plea of guilty to the offense of
> murder in the second degree for the reason
> that it is in Ms. Hor's best interest to do
> so.
>
> Your Honor, there have been negotiations
> in this case and those negotiations have been
> written up in a Plea of Guilty and Negotiated
> Sentence Form and are that in exchange for
> this plea the defendant can be sentenced
> anywhere **from probation to a cap of ten years**,
> . . . and that the State will abandon count
> two  .  .  .  .   And I believe that that
> summarizes the negotiations in the plea.

Id. at 48-49 (emphasis added).  Petitioner's claim that counsel

failed to keep her informed of the court proceedings is unfounded.

Quite to the contrary, counsel's performance was not deficient.

The fact that counsel mentioned, while the interpreter was present,

that the floor of the sentencing range included probation, but did

not specifically mention probation while the interpreter was absent

does not affect the voluntariness of the plea.   Even assuming

arguendo that counsel's performance was deficient, Petitioner has

not shown the resulting prejudice.   See Section A. Ground One;

Section B. Ground Two.

And, finally, counsel's performance was not deficient with

respect to failing to read Petitioner's letter to the Court.  The

record reflects that the letter was forwarded to the trial judge.

Further, counsel highlighted portions of the letter at the

sentencing hearing, and the prosecutor commented on portions of the

letter as well.   Sentencing Tr. at 111-13, 120.   It is also noteworthy that Petitioner Hor testified at the sentencing hearing, at which she expressed her deepest sympathy.   And, Ms. Douglas testified about Petitioner's "heartfelt remorse."   <u>Id</u>. at 109. Thus, clearly, the trial judge was aware of Petitioner's sincere remorse and sadness for the loss of the baby victim, Julie Im. While the prosecutor urged the trial judge to impose a sentence of ten years in prison with no probation to follow (<u>Id</u>. at 119-22), defense counsel vigorously argued for life probation.   <u>Id</u>. at 122-24.   The trial judge explained his sentencing decision, stating in pertinent part:

> Ms. Laksmey Hor, I don't think you are a bad person, I never have thought that from the time I received this case back in 1997, I think it was '97 or so when the case was first brought here when I was in this division.   I have seen you several times over the past few years.   And you are in my judgment a fine person.
>
> But I have to look at what has been presented to me.   And it is illustrated in these photographs that I won't show you.
>
> But with that at this time, after having considered all of the evidence that has been presented, the plea having been previously accepted, at this time, I will adjudicate you to be guilty of murder in the second degree. It is the judgment and sentence of the Court that you serve a term of ten years in the custody of the Department of Corrections with credit for four hundred and seventy-seven days time served.

Id. at 124-25.   Clearly, the judge considered all the evidence before him.   However, even finding Petitioner to be "a fine person," the trial judge imposed the State's recommended sentence based on the medical evidence presented to him.

Even assuming *arguendo* that counsel's performance was deficient, Petitioner has not shown the resulting prejudice.   See Section A.  Ground One; Section B.  Ground Two.   Thus, the ineffectiveness claim must fail.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.   The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.   The Clerk of the Court shall close this case.

**DONE AND ORDERED** in chambers in Jacksonville, Florida, this 15th day of May, 2008.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

34

sc 5/14
c:
Laksmey Hor
Ass't Attorney General (Winokur)